UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION – DETROIT

In re:

Joseph and Sandra Rayes,

    Debtors.

Case No. 08-40809
Chapter 7
Hon. Walter Shapero

_____/

George Heitmanis,

    Plaintiff,

v.

Adv. Pro. 08-04453

Joseph and Sandra Rayes,

    Defendants.

_____/

## OPINION DENYING PLAINTIFF'S MOTION FOR SUMMARY JUDGMENT

### INTRODUCTION

Defendants pled guilty to Embezzlement from a Vulnerable Adult in a state court proceeding and were ordered to pay restitution. Plaintiff filed this adversary proceeding seeking nondischargeability of the restitution amounts under various subsections of 11 U.S.C. § 523 and now seeks summary judgment. For the following reasons, summary judgment is denied.

### BACKGROUND

Joseph Rayes and Sandra Rayes, the debtor-defendants in this case ("Defendants") both pled guilty in the Macomb County, Michigan Circuit Court (the "State Court") to the crime of

1

Embezzlement from a Vulnerable Adult in excess of $20,000, pursuant to M.C.L. 750.174a. That statute states: "A person shall not through fraud, deceit, misrepresentation, coercion, or unjust enrichment obtain or use or attempt to obtain or use a vulnerable adult's money or property to directly or indirectly benefit that person knowing or having reason to know the vulnerable adult is a vulnerable adult." That guilty plea stemmed from a course of action in which Defendants took advantage of an elderly and partially incapacitated woman named Irene Ignatius by obtaining power of attorney over her and converting her extensive assets for the their own personal benefit. The State Court ordered Defendants to pay $919,356 in restitution, and further ordered incarceration and probation. Defendants thereafter filed this Chapter 7 bankruptcy. Ms. Ignatius has since died and this adversary proceeding is brought by George Heitmanis ("Plaintiff"), who had been appointed her full guardian by an order of the Macomb County, Michigan Probate Court. Plaintiff moved for summary judgment on the grounds that the State Court restitution order is, as a matter of law, nondischargeable under 11 U.S.C. § 523 (a)(2), (a)(4), (a)(6), and (a)(7).

## JURISDICTION

This Court has jurisdiction under 28 U.S.C. §§ 1334(b) and 157, and E.D. Mich. L.B.R. 83.50(a). This is a core proceeding under 28 U.S.C. § 157(b)(2)(I).

## SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56 provides the statutory basis for summary judgment, and is made applicable to adversary proceedings via Federal Rule of Bankruptcy Procedure 7056. Summary judgment is only appropriate when there are no genuine issues of material fact and the

2

moving party is entitled to judgment as a matter of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact." Id. (emphasis original). A "genuine" issue is present "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Id. at 248. "The initial burden is on the moving party to demonstrate that an essential element of the non-moving party's case is lacking." Kalamazoo River Study Grp. v. Rockwell Int'l Corp., 171 F.3d 1065, 1068 (6th Cir. 1999)(citing Anderson, 477 U.S. at 248).

## DISCUSSION

Plaintiff's Motion for Summary Judgment did not provide an adequate factual basis or substantive analysis of the counts under § 523 (a)(2), (a)(4), and (a)(6), essentially asserting only the statutory language and bare legal conclusions. At the hearing on Plaintiff's motion, the parties' discussion was essentially limited exclusively to the § 523 (a)(7) count. For those reasons, as to the § 523 (a)(2), (a)(4), and (a)(6) counts, all of which in any event involve some degree of material factual inquiry,[1] which the motion did not adequately address by affidavit or

---

[1] § 523 (a)(2): Plaintiff must establish: "(1) the debtor obtained money through a material misrepresentation that, at the time, the debtor knew was false or made with gross recklessness as to its truth; (2) the debtor intended to deceive the creditor; (3) the creditor justifiably relied on the false representation; and (4) its reliance was the proximate cause of loss." In re Grenier, 458 Fed. Appx. 436, 438 (6th Cir. 2012)(quoting In re Rembert, 141 F.3d 277, 280-81 (6th Cir. 1998)).

§ 523 (a)(4): A debtor shall not be discharged from any debt for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny. "A creditor proves embezzlement by showing that he entrusted his property to the debtor, the debtor appropriated the property for a use other than that for which it was entrusted, and the circumstances indicate fraud." In re Brady, 101 F.3d 1165, 1173 (6th Cir. 1996). "Larceny for purposes of § 523(a)(4) requires proof that the debtor wrongfully and with fraudulent intent took property from its rightful owner." In re Stollman, 404 B.R. 244, 271 (Bankr. E.D. Mich. 2009)(citation omitted). Defalcation requires a showing of

3

otherwise, the Court finds that Plaintiff has not met his summary judgment burden, and thus denies the Motion without prejudice with regard to those three counts and limits this opinion to the remaining § 523 (a)(7) count.

§ 523 (a)(7) states that a debtor shall not be discharged for a debt "to the extent such debt is for a fine, penalty, or forfeiture payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss[.]" The parties' arguments focused on Kelly v. Robinson, 479 U.S. 36 (1986), which interpreted the scope and application of that statute. In Kelly, the Supreme Court found that § 523 (a)(7) excepted from discharge a criminal restitution order stemming from the wrongful receipt of welfare benefits from a Connecticut governmental unit to which the restitution was to be paid. The Court stated the statute applied to "all penal sanctions, whether they be denominated fines, penalties, or forfeitures." Id. at 51. In dealing with the qualifying statutory language that the debt must be "payable to and for the benefit of a governmental unit, and is not compensation for actual pecuniary loss," the Court found that (a) criminal restitution is not operated solely for the victim's benefit, but for the benefit of society as a whole; (b) the victim (at least in the case presented before that Court) has no control over the award of restitution or its amount; and (c) the decision to impose restitution turns on the state's penal goals and the offender's punishment and rehabilitation, rather than the victim's injury. Id. at 52. The primary policy underpinning of that decision was that the federal courts should not

---

culpability similar to the other terms of § 523 (a)(4). Bullock v. BankChampaign, N.A., 133 S. Ct. 1754, 1757 (2013).

§ 523 (a)(6): Proving "willful and malicious injury" requires a plaintiff to show that the defendant (a) either acted with an actual intent to cause their alleged injury or a belief that the alleged injury was substantially certain to result from his act; and (b) engaged in conduct taken in conscious disregard of his duties or without just cause or excuse. In re Markowitz, 190 F.3d 455 (6th Cir. 1999); Wheeler v. Laudani, 783 F.2d 610, 615 (6th Cir. 1986).

4

interfere with state criminal prosecutions. Id. at 44, 47. The Court used broad language, stating that "§ 523(a)(7) preserves from discharge *any* condition a state criminal court imposes as part of a criminal sentence." Id. at 50 (emphasis added).

In light of the Kelly Court's broad language but specific factual context with which it dealt, courts have struggled to interpret that decision. In Hughes v. Sanders, 469 F.3d 475, 476 (6th Cir. 2006), the Sixth Circuit Court of Appeals held that "Kelly applies narrowly to criminal restitution payable to a governmental unit." Id. at 478. The Hughes Court dealt with a nondischargeability action stemming from a civil default judgment for legal malpractice that resulted in an order that the judgment debtor pay restitution to the individual victim. Though the restitution was civil, the Court deemed it to be punitive in nature. The Court found the debt outside the scope of § 523 (a)(7), stating:

> we must determine whether the judgment set out in the complaint is "payable to and for the benefit of a governmental unit" and whether it is compensation for actual pecuniary loss. The answers to those questions are clear. The judgment is payable to Hughes, who is not a governmental unit, and it is in an amount calculated to compensate Hughes for the damage he incurred as a result of [the offender's] malpractice.

Id. at 477. The Hughes Court appears to have had some difficulty with the questions presented, stating that the court below "reluctantly" granted the motion to dismiss the complaint and that it affirmed that holding "equally reluctantly." Id. Several courts have shared the views of the Sixth Circuit, though there is a difference of opinion, both among the Circuits and indeed within the Sixth Circuit itself.[2]

---

[2] Matter of Towers, 162 F.3d 952 (7th Cir. 1998) (civil restitution payable to state attorney general, who would forward the money to the fraud victims, held to be not for the government's benefit, which the Court defined as meaning *financial* benefit); In re Rashid, 210 F.3d 201 (3d Cir. 2000) (federal criminal fraud restitution payable to victims held not payable to and for the benefit of a government unit, which should be defined as economic benefit

5

This Court is bound by what appears to be the Sixth Circuit's interpretation of Kelly but also agrees with its analysis. As such, Kelly should be interpreted narrowly, and further, necessary elements of § 523 (a)(7) are negated if either (a) the penalty is payable to the individual victim, who is not a governmental unit; or (b) the penalty is strictly calculated in the sum of the victim's incurred damages. Another Court in this District has applied Hughes in a similar fashion. See In re Stasson, 472 B.R. 748 (Bankr. E.D. Mich. 2012). This Court concludes and believes that (a) it should construe the provision in question literally; (b) doing so is in accord with the language of the provision itself and with normal rules of statutory construction, and as such, is consistent with, and called for by, the decision in Hughes; and (c) the broad language in Kelly seems to go materially and unnecessarily beyond its specific facts, and to that extent at least, may well be seen as dicta, not to be inappropriately applied to the materially different fact patterns of Hughes and the present matter.

In this case, the necessary elements of § 523 (a)(7) are lacking as a matter of law. In Kelly, the victim of the crime, and thus the immediate recipient and ultimate beneficiary of the restitution, was a governmental unit. Based upon the documents contained in the record here, that does not appear to be the case. Here, Defendants' restitution may have been initially payable to the Probation Department, but it is inferred and assumed that the Probation Department would, and in fact did, then pay money it received over to Ms. Ignatius or her

---

and not some abstract benefit of criminal deterrence) (distinguished by In re Thompson, 418 F.3d 362 (3d Cir. 2005) on the grounds that the federalism concern was inapplicable in Rashid because it was a *federal* restitution order).

But see In re Verola, 446 F.3d 1206 (11th Cir. 2006) (finding Towers and Rashid distinguishable because both lacked the federalism concern because they involved a *civil* penalty and a *federal* criminal restitution order, respectively); In re Browning, 449 B.R. 902, 905 (Bankr. W.D. Ky. 2011) (finding that, because the criminal restitution was payable to the victims but *via the court clerk*, it was payable to a governmental unit; distinguishing Hughes because it involved a civil judgment, not criminal restitution order).

6

representative or estate. This appears to be the mandate of the applicable Michigan restitution statute. M.C.L. 780.766 (2) ("the court shall order… that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate").

Furthermore, in this Court's view, even if the restitution is payable to the victim through a governmental unit acting in essence as but a conduit to, and collection agent for the victim, the focus should be on the ultimate destination of the restitution. As stated in a case that Hughes cited with approval:

> we would pervert the clear, unambiguous language of § 523 (a)(7) if we found that Rashid's restitution obligation was "payable to" a governmental unit. Although the record is unclear whether Rashid's restitution obligations were to be directly paid to his victims or were to pass through a governmental unit before reaching the victims, it is clear that the benefit-the money-is ultimately payable to the victims.

In re Rashid, 210 F.3d at 208.

Plaintiff argues that this restitution was for the benefit of a governmental unit because (a) the criminal matter was called *the People of the State of Michigan* v. Joseph Rayes and Sandra Rayes; (b) under Michigan law, the prosecuting attorney has the ability to enforce the restitution order and in fact did so; and (c) the state has an interest in rehabilitating the offenders and enforcing state laws. Both Rashid and Towers, which the Sixth Circuit cited with approval, held that the benefit should be interpreted in terms of monetary payment, rather than the abstract benefit of criminal deterrence. In re Rashid, 210 F.3d at 208; Matter of Towers, 162 F.3d at 956. While there may have been an incidental benefit to the state as a result of the restitution order, this Court does not believe it satisfies the plain language of the statute.

7

Perhaps more fatal to Plaintiff's case is the requirement that the restitution not be compensation for actual pecuniary loss. In Kelly, the criminal restitution order was issued for the exact amount of the improperly obtained welfare payments. However, the Supreme Court found that such did not make it compensation for the state's actual pecuniary loss because the Connecticut restitution statute employed a flexible remedy tailored to the situation of the offender, not the victim, and did not require the imposition of restitution in the amount of the harm caused. Kelly, 479 U.S. at 52. Thus the fact that the restitution amount was equal to the pecuniary loss, in the Kelly Court's view, was incidental. Such is not the case here. The Michigan restitution statute, M.C.L. 780.766 (2), states that

> when sentencing a defendant convicted of a crime, the court shall order, in addition to or in lieu of any other penalty authorized by law or in addition to any other penalty required by law, that the defendant make full restitution to any victim of the defendant's course of conduct that gives rise to the conviction or to the victim's estate.

(emphasis added). As to such, the State Court in this case held a restitution hearing in which it took evidence and clearly made a determination of the amount of damages suffered by Ms. Ignatius. Mr. Rayes testified that (a) he met Ms. Ignatius in December 2005; (b) her assets at that time were approximately $935,000; and (c) those assets were exhausted by November 2007. Pl. Supp. to Mot. & Memo. for Summ. J. (Dkt. 46), Tr. at 75-78.[3] The State Court apparently accepted Mr. Rayes' $935,000 figure and, in calculating Ms. Ignatius' outstanding damages, reduced it by (a) restitution payments already made and (b) the value of any benefit Defendants conferred on Ms. Ignatius. The State Court stated:

---

[3] Although this document was filed shortly after the ordered deadline, the Court has considered the substance of the State Court record and believes it is appropriate to do so.

8

> Now, the Court is satisfied that the entire amount utilized for this house was fraudulently obtained, and appropriated for purposes other than the purpose of the victim in this case. However, the only testimony I have as to the cost of her other residence for 18 months was $800.00 a month which was paid and that included taxes and other considerations, that's $9,600.00, I believe, credit for that. I also believe $744.00 for maintenance was appropriate, and I also believe that an approximately $10,000.00 for her 18 month involvement at the defendants' residence would be appropriate. Again, that's based on her cost of her other residence and assuming that she had a cost here as well. For a total of $20,344.00 is to be – the 935,000 is to be reduced.

Id. at 159-60. The State Court concluded the hearing with the following exchange:

> THE COURT: …No, the Court is satisfied that this is -- the restitution amount is the amount indicated, $935,000.00, and –
>
> MS. FAUNCE [attorney for prosecution]: It comes out to the $919,356.00.
>
> THE COURT: That's what the Court has allowed. Judgment will enter.
>
> MR. SULLIVAN [attorney for Defendants]: Does that include the payment previously paid, your Honor?
>
> MS. FAUNCE: Yes, that includes the $10,000.00.

Id. at 162. It is clear that the State Court was bound to issue mandatory restitution in the amount of the victim's actual pecuniary damages and did exactly that after a detailed inquiry into what that figure was. This is wholly opposite to the Connecticut restitution statute that was construed by the Kelly Court. This Court's conclusion is also reinforced by the facts that, in addition to the ordered restitution, the State Court imposed the additional penalties of incarceration and probation. These punishments all serve to defend the state's and society's interests of punishing and rehabilitating Defendants. The multi-faceted nature of the criminal sentences may also serve to reduce the federalism concerns discussed in Kelly.

9

As a matter of law, Plaintiff cannot therefore prove each of the necessary elements of § 523 (a)(7). As such, Plaintiff has not met his burden in this summary judgment motion as to that count.

<u>CONCLUSION</u>

Plaintiff's Motion for Summary Judgment is denied with regard to the 11 U.S.C. § 523 (a)(2), (a)(4), (a)(6), and (a)(7) counts. An order to this effect is being entered contemporaneously.

.

**Signed on July 16, 2013**

                  **/s/ Walter Shapero**
              **Walter Shapero**
              **United States Bankruptcy Judge**

10

08-04453-wsd    Doc 47    Filed 07/16/13    Entered 07/17/13 08:12:50    Page 10 of 10